IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| MARK HENSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TREBRO MANUFACTURING, ) <br> INC., ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION <br> FILE NO.: 23-cv-124 <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

NOW COMES, Mark Henson, through undersigned counsel, and files this complaint against Trebro Manufacturing, Inc. ("Trebro") for damages, as follows:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff is a resident and citizen of the State of Georgia.

2.

Defendant Trebro is a foreign corporation formed under the laws of the State of Montana that does business in Georgia and may be served with a copy of this complaint and summons upon its registered agent, to wit: Greg L. Tvetene 6840 S.

Frontage Road, Billings, Montana 59108.  Defendant's principal address is 6840 S. Frontage Rd., Billings, MT 59101.  When so served, this Defendant will be subject to the jurisdiction of this Court.

3.

Complete diversity exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Thus, this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.

4.

Defendant is subject to the personal jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91.

5.

Venue is proper in the Albany Division of the Middle District of Georgia pursuant to 28 U.S.C. § 1391.

**FACTS GIVING RISE TO CLAIMS**

6.

Defendant Trebro Manufacturing, Inc. is primarily in the business of manufacturing and selling harvesting machines for the turf grass industry.

7.

On or around October 15, 2007, Plaintiff began working for Defendant as a sales representative selling turf harvesters. Plaintiff worked for Defendant until January 2022.

8.

During the entire time Plaintiff worked for Defendant, Plaintiff was a resident and citizen of the State of Georgia.

9.

While working for Defendant, Defendant supplied Plaintiff with all his work equipment including a company computer, phone, truck, etc. to use in his office in Georgia.

10.

Plaintiff sold harvesters to Defendant's customers in Georgia.

11.

Plaintiff was assigned by Defendant to sell harvesters in Georgia, among other states.

12.

Approximately 25% of Plaintiff's customers were from Georgia.

13.

Defendant received payment from customers in Georgia.

14.

As part of his employment with Defendant, Plaintiff visited customers and potential customers in Georgia.

15.

Defendant agreed to pay Plaintiff 0.7% of gross sales on the price of the harvesters Plaintiff sold on behalf of Defendant as his compensation.

16.

Once Plaintiff obtained a purchase order from a customer, the customers paid a non-refundable downpayment.

17.

Once Plaintiff obtained a purchase order from a customer, his portion of the sales job was complete.

18.

Defendant paid Plaintiff his commission payment when the harvester was delivered to the customer.

19.

Plaintiff did not have a written employment agreement with Defendant, but the terms of the agreement described above constitute an oral agreement.

20.

As part of his employment with Defendant, Plaintiff and Defendant never agreed to a commission forfeiture arrangement whereby Plaintiff would forfeit commissions owed to him upon his departure from Defendant.

21.

Nonetheless, upon his departure from employment with Defendant, Defendant refused to make any commission payments for harvesters Plaintiff obtained purchase orders for even after the harvesters were delivered to the customers to whom Plaintiff sold the harvesters.

22.

Upon information and belief, Defendant has delivered over $12 million in harvesters Plaintiff sold prior to his departure from Trebro for which it has not paid him any commission payments.  Many of the harvesters Plaintiff sold that were delivered following Plaintiff's departure from Trebro were to customers in the State of Georgia.

23.

Upon information and belief, Trebro owes Plaintiff no less than $85,000 (and most likely more) in commission payments for harvesters he sold while working for Trebro that it has refused to pay him.

## COUNT 1: BREACH OF ORAL CONTRACT

24.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

25.

As demonstrated by both an oral agreement and its course and dealing, Defendant entered into an oral agreement with Plaintiff to pay him 0.7% of the gross price of harvesters Plaintiff sold on behalf of Defendant.

26.

This oral agreement constitutes a valid and enforceable oral contract.

27.

Plaintiff fully performed all actions necessary to earn commissions pursuant to this agreement.

28.

Plaintiff and Defendant never agreed that Plaintiff would forfeit his commissions after his departure for harvesters he sold awaiting delivery.

29.

Defendant breached this oral contract when it refused to pay Plaintiff for all sales he achieved for the Defendant.

30.

Because of Defendant's breach of contract, it is liable to Plaintiff for these unpaid commissions in an amount to be proven at trial.

## **COUNT 2: UNJUST ENRICHMENT**

31.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

32.

Defendant has been conferred a benefit, namely, monetary compensation for the performance of the services performed by Plaintiff.

33.

Defendant induced, accepted, and encouraged Plaintiff to obtain or achieve purchase orders referenced above for it, but Defendant has avoided making payments to Plaintiff for the value received.

34.

Defendant was unjustly enriched by this conduct to Plaintiff's detriment in an amount to be proven at trial.

35.

Defendant is liable to Plaintiff for the unjust enrichment it received due to Plaintiff's work.

## COUNT 3: PROMISSORY ESTOPPEL

36.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

37.

Defendant made promises to Plaintiff as outlined above.

38.

Defendant should have expected Plaintiff to rely on these promises as part of his employment with Defendant.

39.

Defendant did in fact rely on those promises in seeking and obtaining contracts on behalf of Defendant.

40.

Plaintiff's reliance on these promises were detrimental because he was never paid all the commissions as he was promised in an amount to be proven at trial.

41.

Under the circumstances, injustice can only be avoided by enforcing the promises described above because Plaintiff spent his working hours pursuing sales for which he was never compensated, and he cannot recover that professional time and effort.

## COUNT 4: QUANTUM MERUIT

42.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

43.

Defendant made the promises described above, and Plaintiff did in fact rely on those promises in performing his duties as described above.

44.

Plaintiff's work in selling the harvesters for which he was never paid a commission was valuable to Defendant.

45.

Defendant has been paid for many harvesters Plaintiff sold prior to his departure from employment with Defendant.

46.

It would be unjust to allow Defendant to receive the benefit of Plaintiff's work without compensating Plaintiff.

47.

Plaintiff expected compensation for the harvesters he sold on behalf of Defendant whether delivered before or after his departure from employment with Defendant.

48.

Plaintiff is entitled to recover from Defendant in quantum meruit in an amount to be proven at trial.

### COUNT 5: NEGLIGENT MISREPRESENTATION

49.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.

Defendant negligently represented to the Plaintiff that Defendant would pay 0.7% commissions on all the gross sales he procured for the Defendant.

51.

It was foreseeable that Plaintiff would reasonably rely on that representation.

52.

Defendant did not pay the amount represented to Plaintiff, and Plaintiff's reliance on that representation caused Plaintiff to suffer economic harm in an amount to be proven at trial.

### **COUNT 6: ATTORNEY' FEES AND EXPENSES OF LITIGATION**

53.

Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.

Plaintiff attempted to resolve this matter with Defendant prior to filing suit, but Defendant refused to compensate Plaintiff in any amount for the sale of harvesters at issue in this complaint.

55.

Defendant has acted in bad faith, has been stubbornly litigious, and has caused Plaintiff unnecessary trouble and expense entitling Plaintiff to expense of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays:

(a) That the Court enter judgment for Plaintiff on all actual, compensatory, consequential, and nominal damages in an amount to be proven at trial, plus pre-judgment and post-judgment interest at the legal rate;

(b) That Plaintiff be awarded punitive damages in an amount sufficient enough to punish and deter Defendant from conduct described above against the public in the future;

(c) That the Plaintiff recover reasonable attorney's fees and litigation expenses pursuant to O.C.G.A. § 13-6-11;

(d) That Plaintiff have a trial by jury of twelve;

(e) The court costs be assessed against Defendant; and

(f) That Plaintiff recover such other and further relief as this Court deems just and proper.

This 7th day of August 2023.

                                            Andrew W. Holliday, P.C.

                                            /s/ Andrew W. Holliday
                                            Andrew W. Holliday
                                            Georgia Bar No. 362472
                                            Attorney for Plaintiff

Andrew W. Holliday, P.C.
11175 Cicero Drive
Suite 100
Alpharetta, GA 30022
Phone: (678) 646-6771
Fax: (678) 802-2129
Email: andrew@hollidayfirm.com